**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **PHILIP KEITH LEMASURIER,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:05-CV-0472-Y** |
| | § | |
| **DOUGLAS DRETKE, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**
**AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the

provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for

the Northern District of Texas. The findings, conclusions, and recommendation of the United States

Magistrate Judge are as follows:

## I. FINDINGS AND CONCLUSIONS

### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

### B. PARTIES

Petitioner Philip Keith LeMasurier, TDCJ-ID #1052799, is in custody of the Texas

Department of Criminal Justice, Correctional Institutions Division, in Amarillo, Texas.

Respondent Douglas Dretke is the Director of the Texas Department of Criminal Justice,

Correctional Institutions Division.

### C. FACTUAL AND PROCEDURAL HISTORY

In February 2001, LeMasurier was charged in a six-count indictment with aggravated sexual

assault of a child under fourteen years of age and indecency with a child by contact in Cause No. 0790538D in Tarrant County, Texas. (Clerk's R. at 3-4.) On July 24, 2001, a jury found LeMasurier guilty of two counts of aggravated sexual assault of a child, and, on July 25, 2001, the jury assessed his punishment at fifty years' confinement in each case, the sentences to run concurrently. (*Id.* at 57.) LeMasurier appealed his convictions, but the Second District Court of Appeals affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused his petition for discretionary review. *LeMasurier v. Texas*, 91 S.W.3d 897 (Tex. App.–Fort Worth 2002); PDR No. 065-03. Thereafter, LeMasurier filed a state application for writ of habeas corpus raising the claims presented herein, which was denied by the Texas Court of Criminal Appeals without a hearing on the findings of the trial court. *Ex parte LeMasurier*, No. 61,307-01, at cover. LeMasurier filed this federal petition for writ of habeas corpus on July 10, 2005. *See Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998).

The testimony at trial established that LeMasurier was married to Della LeMasurier who had three children by another marriage, Nina, who was seven at the time, Jason, and Joshua. (2Reporter's R. at 41-41.) LeMasurier had at least one child by another marriage, Doug. (*Id.* at 48.) LeMasurier, Della, Nina, Jason, and Della's brother Dale Sanchez lived together in a house in Arlington, Texas. (*Id.* at 39.) On the morning of October 18, 2000, Jason heard Nina crying and went out into the hallway. (*Id.* at 103.) LeMasurier was naked, and Nina had her pants and shorts down. (*Id.*) Jason questioned Nina about the incident later, and the two decided to "tell on" LeMasurier. (*Id.* at 131-33.) On Saturday night, October 21, 2000, Doug spent the night at the house. (*Id.* at 48.) The next morning the three children went into the master bedroom and gave Della a written note. (*Id.* at 48-50, 105.) The note read:

From Nina, written by Jason,

> Philip once told Nina to rub his penis. From this sentence, you should know that I know that Philip got his nipple pierced, because Nina told me he makes her pull on the ring. One time he licked all over Nina's chest. He also has two sex videos. He would take off Nina's clothes and his and do whatever is on the tapes. He would stick his penis into Nina's cola. This all started when Nina was in kindergarten. (*Id.* at 61.)

After reading the note, Della called LeMasurier at work and told him to come home, and she took the children to a neighbor's house. (*Id.* at 51–53.) She planned to kill LeMasurier with a butcher knife. (*Id.* at 53-54.) Dale arrived home from work and refused to leave Della alone to confront LeMasurier. (*Id.* at 54.) When LeMasurier drove up to the house, Della called 911 and told the police to get there quickly because she was going to kill her husband. (*Id.*) LeMasurier walked into the house, and Della threw the note at him and told him to read it. (*Id.* at 55.) Then she went after him with the knife. Dale pulled her back, and LeMasurier ran from the house. (*Id.*) The police arrived shortly thereafter and arrested Della. (*Id.* at 56.)

CPS caseworkers questioned Jason and Nina and obtained a written statement from Jason. (*Id.* at 151-157.) Nina showed the caseworkers where the pornographic videotapes were kept in LeMasurier's and Della's bedroom closet, and she pulled a dildo out from under their bed. (*Id.* at 63, 107, 158.) Nina told Della that LeMasurier had shown her the videotapes, touched her "cola," and used the dildos on her. (*Id.* at 57-63.) During the sex assault exam approximately three weeks later, Nina told the nurse examiner that LeMasurier had rubbed his "pee-pee" in her vagina, stuck his "pee-pee" in her "butt," put his finger in her vagina, put his mouth on her vagina, and made her rub his "pee-pee" up and down. (3Reporter's R. at 51-54.) Other than some redness, Nina's sexual assault exam was normal. (*Id.* at 56, 61.) Through the use of anatomical dolls, Nina demonstrated that LeMasurier touched her vagina and "butt" with his penis. (2Reporter' R. at 131, 134.)

3

At the time of trial, Della continued to maintain a relationship with LeMasurier, and Della's ex-husband had gained custody of Nina and Jason.  (2Reporter's R. at 66-68.)  Della stated that she no longer believed that LeMasurier had abused Nina.  (*Id.* at 83.)

## D.  Issues

In eleven grounds, LeMasurier asserts his constitutional rights were violated because–

(1)      the trial court lacked jurisdiction over his case;

(2)      the magistrate judge presided over the trial on the merits;

(3)      evidence was obtained as a result of an unconstitutional search and seizure;

(4)      the evidence was insufficient to support his conviction;

(5)      the trial court failed to order a pretrial investigation report (PSI);

(6)      the prosecution failed to disclose its intent to introduce evidence of extraneous offenses;

(7)      evidence was admitted of unadjudicated extraneous offenses, other crimes, wrongs, or bad acts;

(8)      he was denied his right to confront witnesses against him;

(9)      the trial court failed to provide the jury with a limiting instruction;

(10)     the prosecution engaged in prosecutorial misconduct; and

(11)     he received ineffective assistance of counsel.   (Petition at 7-8 and insert.)

## E.  Rule 5 Statement

Dretke believes one or more of LeMasurier's claims are unexhausted and/or procedurally barred from federal habeas review.  28 U.S.C. § 2254(b)(1).  (Resp't Answer at 5.)

4

F. DISCUSSION

1. Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

Further, federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Factual determinations by a state court are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *Id.* § 2254(d)(2), (e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams*, 529 U.S. at 399. The applicant bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

5

Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, as here, it is an adjudication on the merits, which is entitled to this presumption. *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

## 2. Exhaustion/Procedural Default

Applicants seeking habeas corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1)(A); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher*, 169 F.3d at 302; *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). In Texas, the highest state court for criminal matters is the Texas Court of Criminal Appeals. *Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985). Thus, a Texas prisoner may satisfy the exhaustion requirement by presenting both the factual and legal substance of a claim to the Texas Court of Criminal Appeals in either a petition for discretionary review or a state habeas corpus proceeding pursuant to article 11.07 of the Texas Code of Criminal Procedure in a procedurally proper manner. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (Vernon 2005); *Depuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

Dretke asserts that one or more of LeMasurier's ineffective assistance claims under ground eleven are unexhausted and barred from habeas review. Having reviewed the state habeas record, however, it appears LeMasurier sufficiently exhausted his ineffective-assistance claims for purposes of § 2254(b)(1)(A).

Dretke also asserts that LeMasurier's first, second, third, fourth, sixth, seventh, ninth, and

6

tenth grounds, defaulted in state court, are procedurally barred from federal habeas review. (Resp't Answer at 6-9.) Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 729, (1991); *Johnson v. Puckett*, 176 F.3d 809, 823 (5th Cir. 1999); *Fisher*, 169 F.3d at 300.

LeMasurier claims under his first ground that his constitutional rights were violated because the trial court lacked jurisdiction to act in his case given the fact that the indictment was presented in the 213th Judicial Court of Tarrant County and there was no transfer order transferring the case to the Criminal District Court No. 1. (Pet'r Memorandum in Support at 1.) TEX. GOV'T CODE ANN. § 24.202 (Vernon 2004). LeMasurier claims under his second ground that his constitutional rights were violated because the magistrate judge exceeded his limited authority of jury selection by presiding over the trial on the merits. (Pet'r Mem1orandum in Support at 2.) LeMasurier raised these claims on direct appeal, however, the appellate court determined that he had waived any alleged error by failing to pursue a plea to the jurisdiction of the court and to object to the authority of the magistrate judge to conduct jury selection. (State Habeas R. at 219-20.) Under Texas law, habeas corpus may not be used to relitigate matters addressed on direct appeal, unless the prior judgment is subsequently rendered void or the Texas Court of Criminal Appeals has decided to apply relief retroactively following a change in the law. (*Id.* at 198.) *Ex parte Drake*, 883 S.W.2d 213, 215 (Tex. Crim. App. 1994). The state habeas court refused to relitigate the issues because LeMasurier failed to satisfy either of those prerequisites. (*Id.* at 198.)

LeMasurier claims under his sixth and seventh grounds that his constitutional rights were

violated because the prosecution failed to give reasonable notice of its intent to introduce evidence of extraneous offenses and improperly introduced evidence of unadjudicated extraneous offenses at trial. (Pet'r Memorandum in Support at 5-7.) LeMasurier raised these claims on direct appeal, however, the appellate court determined that he had failed to preserve the claims for review, and thus waived the claims, by failing to make a timely objection. (State Habeas R. at 223-25.) In turn, the state habeas court refused to relitigate the claims. (*Id.* at 199.)

LeMasurier claims under his third ground that his constitutional rights were violated because the prosecution introduced into evidence items obtained pursuant to an illegal search conducted without a search warrant and absent a peace office. (Pet'r Memorandum in Support at 2-3.) Under his fourth ground, LeMasurier claims the evidence was insufficient to support his convictions. (*Id.* at 3-4.) LeMasurier did not raise these claims on direct appeal, and, instead, raised the claims for the first time in his state habeas application. Under Texas law, search issues are waived if a habeas applicant had a fair opportunity to raise the issue on direct appeal but did not. (State Habeas R. at 198.) Likewise, a sufficiency of the evidence claim is waived if not raised on direct appeal. (*Id.*) *Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994).

LeMasurier claims under his ninth ground that his constitutional rights were violated by the trial court's failure to give the statutorily-required reasonable doubt instruction regarding extraneous offense evidence at the punishment phase. (Pet'r Memorandum in Support at 8-9.) LeMasurier did not raise this issue on direct appeal, and, instead, raised the claim for first time in his state habeas application. Under Texas law, a claim based purely on statutory grounds or procedural error is not cognizable on habeas review without a showing of harm. (State Habeas R. at 200.) *Ex parte Banks*, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989). The state habeas court determined the claim was not

cognizable because LeMasurier had failed to prove that any error in the jury instruction contributed to his conviction or punishment.  (State Habeas R. at 200-01.)

LeMasurier claims under his tenth ground that his constitutional rights were violated because the prosecution committed multiple acts of misconduct during cross-examination of him and during jury argument.  (Pet'r Memorandum in Support at 9-11.)  He raised these claims for the first time in his state habeas application.  Under Texas law, claims found in the record will not be reviewed for the first time on writ of habeas corpus.  *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1998) (op. on reh'g).  Exceptions to the rule are (1) constitutional errors when the law has changed after appeal, and (2) claims for which additional evidence is needed for factual development.  *Ex parte Bravo*, 702 S.W.2d 189, 193 (Tex. Crim. App. 1982); *Ex parte Torres*, 943 S.W.2d at 475.  The state court determined that the claim was not cognizable on habeas review because LeMasurier had failed to prove that applicable law had changed after his appeal or that additional evidence was needed before resolution of the claim.  (State Habeas R. at 201.)

In each instance above, the state court's decision was based on an adequate and independent state procedural default foreclosing federal habeas review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801- 07 (1991); *Hughes v. Dretke*, 412 F.3d 582, 592-93 (5th Cir. 2005), *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. Oct. 18, 2005) (No. 05-7107); *Cotton v. Cockrell*, 343 F.3d 746, 754 (5th Cir. 2003), *cert. denied*, 540 U.S. 1186 (2004); *Ellis v. Lynaugh*, 883 F.2d 363, 367 (5th Cir. 1989).  Federal habeas corpus relief is therefore unavailable to LeMasurier unless he can show either (1) cause for the default and actual prejudice, or (2) that the federal court's failure to consider the claims will result in a miscarriage of justice, i.e., that he is actually innocent of the crimes or of the sentences imposed.  *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992); *Coleman*, 501 U.S. at 750;

9

*Finley v. Johnson*, 243 F.3d 215, 219-20 (5th Cir. 2001).  LeMasurier makes no allegation that he is actually innocent of the offenses, thus, he must satisfy the "cause" prong of the cause-and-prejudice exception.  Toward that end, LeMasurier contends the defaulted claims are the result of ineffective assistance of trial counsel and appellate counsel, who failed to raise the issues at trial and on appeal.  (Pet'r Reply at 3-7.)

In certain circumstances counsel's ineffectiveness in failing to properly preserve a claim for review in state court will suffice to excuse a procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  However, a claim of ineffective assistance must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.  *Murray v. Carrier*, 477 U.S. 478,  489 (1986); *Edwards*, 529 U.S. at 451-52.  LeMasurier did not raise an ineffective assistance claim against appellate counsel in state court.  Thus, to the extent LeMasurier contends appellate counsel was ineffective by not raising one or more of the issues presented on direct appeal, the claim is unexhausted, and, under the Texas abuse-of-the-writ doctrine, he cannot return to state court for purposes of exhausting the claim.  TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4. Thus, the claim is procedurally defaulted.  A procedurally defaulted ineffective-assistance claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the cause-and-prejudice standard with respect to the ineffective-assistance claim itself.  LeMasurier offers no explanation for not raising an ineffective assistance claim against appellate counsel in his state habeas application.  Thus, his ineffective assistance claim against appellate counsel cannot serve as cause to excuse the procedural default of another habeas claim.

To the extent LeMasurier attempts to establish cause by alleging ineffective assistance of trial counsel, his argument fails.  Counsel's failure to recognize or raise a claim does not constitute

10

cause for a procedural default unless counsel's performance is constitutionally ineffective under the standard of *Strickland v. Washington*, 466 U.S. 668 (1984).   As discussed *infra*, LeMasurier has failed to show deficient performance on the part of counsel or prejudice under those grounds.   Thus, no valid basis for cause to excuse his procedural default is shown by his arguments of ineffective assistance of counsel.   LeMasurier fails to demonstrate cause or actual prejudice in connection with the relevant grounds, and absent such a showing, grounds one, two, three, four, six, seven, nine, and ten are barred by the doctrine of procedural default.

### 3. Presentence Investigation Report

LeMasurier claims that his constitutional rights were violated by the trial court's failure to order a presentence investigation report (PSI).   (Pet'r Memorandum in Support at 4-5.)   The preparation and use of a PSI, however, is not a federal constitutional right of a criminal defendant. *See Katz v. King*, 627 F.2d 568, 576 (1st Cir. 1980).   Furthermore, the state habeas court determined that, as a matter of state statutory law, at the time of LeMasurier's trial he was not entitled to a PSI because punishment was assessed by the jury.   (State Habeas R. at 199.)   Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).   A state's interpretation of its own rules or statutes does not raise a federal constitutional issue. *Wainwright v. Goode*, 464 U.S. 78, 83 (1983); *Moreno v. Estelle*, 717 F.2d 171, 179 (5th Cir. 1983). When a federal court considers whether habeas corpus is warranted, the decision is limited to whether a conviction violated the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254; *Rose v. Hodges*, 423 U.S. 19, 21 (1975).  LeMasurier's claim is not cognizable in federal habeas corpus review because he has not demonstrated an attendant federal

constitutional claim. *See Campos v. Johnson*, 958 F. Supp. 1180, 1188-89 (W.D. Tex. 1997).

### 4. Confrontation Clause

LeMasurier claims that his constitutional right to confront witnesses against him was violated during the punishment phase because the state offered extraneous evidence that he sexually assaulted his son Doug without calling Doug as a witness. (Pet'r Memorandum in Support at 7-8.) Doug was unavailable to testify at trial so the state called the examining doctor who had performed Doug's sexual assault exam. The doctor testified that during the exam Doug stated that LeMasurier had Doug masturbate him and that LeMasurier sucked Doug's penis, which LeMasurier denied. (4Reporter's R. at 38.) The state habeas court determined that LeMasurier failed to prove that he had a constitutional right to confront and cross-examine Doug because Doug was not called as a witness against him. (State Habeas R. at 193.)

Under state law, evidence of extraneous offenses is specifically authorized at the penalty stage. TEX. R. EVID. 803(4); TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1) (Vernon Supp. 2005). Further, not all out-of-court statements are prohibited by the Confrontation Clause. *Idaho v. Wright*, 497 U.S. 805, 813-14 (1990). If the statement falls within a firmly rooted hearsay exception, reliability can be inferred without more. *Id.* at 815. The exception for a statement made for purposes of medical diagnosis or treatment is firmly rooted. *White v. Illinois*, 502 U.S. 346, 356 n.8 (1992). Therefore, the examining doctor's testimony was admissible as statements for purposes of medical diagnosis or treatment. The statements were so trustworthy that cross-examination of Doug would be expected to add little to the reliability of the admitted hearsay evidence. *Id.* at 357. Thus, the state's failure to call Doug as a witness and allow LeMasurier an opportunity to cross-examine him did not violate the Confrontation Clause. *Id.* at 350, 354-58.

12

### 5.  Ineffective Assistance

LeMasurier claims that he received ineffective assistance of trial counsel because (1) counsel failed to file appropriate motions, make appropriate objections, provide a defense, and interview potential witnesses, (2) counsel allowed admission of inadmissible evidence, and (3) was generally in poor health.  (Pet'r Memorandum at 11-13.)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI; *Strickland*, 466 U.S. at 688.  To establish ineffective assistance a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) the defense was prejudiced as a result.  *Strickland*, 466 U.S. at 688.  To prevail, he has the burden to demonstrate both deficient performance and prejudice.  *Id.* at 687.  The deficient-performance prong requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.  *Id*.  If this first hurdle is cleared, the petitioner then has the burden to show that because of counsel's deficient performance there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* at 694.  A reasonable probability is one sufficient to undermine confidence in the outcome of the proceeding.  *Id.*

A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy.  *Id*. at 668, 688-89.  Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight.  *Id.* at 689.  Strategic choices made by counsel after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable.  *Id.* at 690.

Where, as here, a petitioner's ineffective assistance claims have been reviewed on the merits under the *Strickland* standard and denied by the state's highest court, federal habeas relief will be granted only if the state court's decision was contrary to or involved an unreasonable application of *Strickland*, or if the state court's decision is based on an unreasonable determination of the facts in light of the evidence before the court. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002); *Foster v. Johnson*, 293 F.3d 766, 777 (5th Cir. 2002); *Santellan v. Dretke*, 271 F.3d 190, 198 (5th Cir. 2001). Under this standard, the state court's application of *Strickland* must be shown to be not only erroneous, but objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003). Having conducted an independent review, the state courts' adjudication of LeMasurier's claims was neither erroneous nor objectively unreasonable.

The same trial court judge presided over LeMasurier's trial and conducted the habeas proceeding. After holding a hearing by affidavit on LeMasurier's ineffective-assistance claims, the judge entered findings of fact refuting LeMasurier's allegations of ineffective assistance, concluded that LeMasurier had failed to present proof of his claims or to otherwise satisfy the deficient-performance prong of the *Strickland* standard, and recommended that habeas relief be denied on his claims. (State Habeas R. at 192-203) As noted, the Texas Court of Criminal Appeals denied LeMasurier's state habeas application based on the trial court's findings. This court must afford the state's factual findings the presumption of correctness unless the findings are rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1). LeMasurier's conclusory allegations of ineffective assistance fail to do so. *Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002).

LeMasurier contends counsel should have filed a motion for discovery, a motion to suppress

evidence, and a motion requesting a PSI, however, he has wholly failed to demonstrate that, had counsel done so, he would have prevailed on one or more of the motions and the result of his trial would have been different or his sentences significantly less harsh.  Similarly, LeMasurier contends counsel should have made appropriate objections to the jurisdiction of the court, the actions of the magistrate judge when he exceeded his authority, the lack of a PSI at the punishment phase, the introduction of evidence obtained pursuant to an illegal search and seizure, introduction of hearsay evidence, the prosecutors' attempt to prevent witnesses for the defense from testifying, the prosecutors' improper arguments and multiple acts of misconduct, and the failure of the court to include a reasonable doubt instruction regarding extraneous-offense evidence.  (Pet'r Memorandum in Support at 11-13.)  However, he has not demonstrated that any such objections would have been successful and would have changed the outcome of his trial.  Counsel is not required to file meritless motions or make frivolous objections.  *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

LeMasurier contends counsel failed to interview and call potential witnesses, adequately investigate the case, and present evidence favorable to him.  (*Id.* at 12.)  LeMasurier fails, however, to allege with specificity what evidence a more thorough investigation would have revealed and how it would have likely altered the outcome of the trial.  *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994.  Nor does he provide the names of specific individuals that counsel was aware of but failed to interview, what the substance of their testimony would have been and whether it would have been favorable to the defense, or that they would have been available and willing to testify at trial.  *See Sayre v. Anderson* 238 F.3d 631, 635-36 (5th Cir. 2001).

A review of the totality of counsel's representation reveals that LeMasurier was defended vigorously and competently.  Counsel explained in his affidavit that the nature of the case together

with the then pending aggravated-sexual-assault cases against LeMasurier involving his son and his niece made it very difficult to have a "planned defense." (State Habeas R. at 127.)   Nevertheless, counsel filed various pretrial motions and appeared to have extensive knowledge regarding the facts and circumstances of the case.  He conducted voir dire and jury selection, raised numerous relevant objections during trial, cross-examined the state's witnesses, and gave closing argument.

Finally, LeMasurier contends counsel's health impeded counsel's performance, however, he provides no proof that counsel's physical condition affected his ability to represent LeMasurier effectively.  On the contrary, counsel's and co-counsel's affidavits reflect that counsel suffers from osteomyelitis of the left foot but that the symptoms of the disorder do not include any mental impairment.  (State Habeas R. at 197.)   Counsel was not on medication for the disorder, and, apparently, no one had any concerns during trial regarding counsel's health or his ability to try the case. (*Id.*)

## II.  RECOMMENDATION

Based on the foregoing dicussion, LeMasurier's petition for writ of habeas corpus should be denied.

## III.  NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document.  The court is extending the deadline within which to file

16

specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until March 2, 2006.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(B)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual finding or legal conclusion accepted by the United States District Judge.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

## IV.  ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until March 2, 2006, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation.  It is further ORDERED that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED February 9, 2006.

    /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE

17